UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CAMERON A. NIGHTINGALE,            Case No. 6:20-cv-00406-MC

    Plaintiff,                                              ORDER

    v.

BRANDON KELLY, OSP Superintendent; JOHN CATALDO, OSP Captain; BRIAN STEPHEN, OSP Captain; JERRY PLANTE; ODOC S.I.U. Investigator; CRAIG PRINS; ODOC Inspector General; KRAIG MCGLATHERY, ODOC Asst. Inspector General; JASON BROWN; ODOC Asst. Inspector General; JEFFREY PARNELL, OSP Corrections Officer; CLAYTON BORDEN, OSP Captain; ADAM KIDWELL; OSP Grievance Coordinator; ROB PERSSON; Westside Institution Administrator; MICHAEL GOWER, Assistant Director of Operations,

    Defendants.
_____

MCSHANE, District Judge.

1    - ORDER

Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 and alleges retaliation against him in violation of his First Amendment rights and confiscation of his property in violation of his Fourth and Fourteenth Amendment rights. Defendants now move for dismissal of plaintiff's claims against defendants Kelly, Cataldo, Stephen, Plante, Prins, Brown, Borden, Kidwell, Persson, and Gower on grounds that plaintiff's allegations fail to state viable claims for relief under § 1983.[1] Defendants also move to dismiss several claims against defendant Parnell on grounds of untimeliness. Defendants' motion is GRANTED.

BACKGROUND

Plaintiff's Complaint includes nine "Causes of Action" arising from five interactions, or "episodes," between plaintiff and Officer Jeffrey Parnell, and a sixth episode related to the investigations of plaintiff's grievances against Officer Parnell. *See* Compl. (ECF No. 1).

Episode One occurred on June 4, 2017, when Officer Purcell allegedly searched plaintiff's cell and accused him of possessing contraband, threatened plaintiff with repeated searches, and improperly confiscated plaintiff's personal property. Compl. ¶¶ 18-23.

Episode Two occurred on June 18, 2017, when Officer Parnell allegedly conducted another search of plaintiff's cell in retaliation for plaintiff's complaints about Officer Parnell's conduct. According to plaintiff, Officer Parnell "stole" $200 worth of property and destroyed plaintiff's television. *Id.* ¶¶ 28-29. After plaintiff filed a grievance and grievance appeal regarding Parnell's conduct, Grievance Coordinator Kidwell informed plaintiff that the grievance

---

[1] Defendants do not seek dismissal of claims against defendant McGlathery, because he no longer works for ODOC and service of summons was not waived on his behalf. Regardless, plaintiff fails to state a claim against McGlathery and the claims against him are dismissed for the reasons explained below.

2   - ORDER

process had been suspended because Officer Parnell was on leave from the institution. *Id.* ¶ 34. After Officer Parnell returned to work on December 3, 2018, Kidwell reinstated the grievance at plaintiff's request. *Id.* ¶ 48.

Episode Three occurred on November 19, 2018, when Officer Parnell sent plaintiff to a waiting area for ninety minutes and allegedly threatened plaintiff with transfer to another institution if he continued to file grievances. *Id.* ¶¶ 37-39. Plaintiff alleges that he "sought resolution by having this dispute reported" to Jerry Plante of the Special Investigation Unit. Compl. ¶ 41.

Episode Four occurred on December 4, 2018, when Officer Parnell allegedly conducted a "shake down" search of plaintiff's cell and falsely accused plaintiff of possessing "escape devices." *Id.* ¶ 49. Plaintiff claims that he was placed in disciplinary segregation for twenty-five days as a result of the false allegations, and that Officer Parnell never issued a misconduct report or formally charged plaintiff with a rule violation. While plaintiff was in segregation, he lost his prison job when it was assigned to another inmate. *Id.* ¶¶ 49-51.

Episode Five occurred in late December 2018. Plaintiff's property had been held in storage during his time in disciplinary segregation, and when he was released, plaintiff discovered that several items were missing. Plaintiff alleges that Officer Parnell failed to prepare a list of items that were confiscated on December 4, 2018, as required by prison regulations, and that he stole plaintiff's property. Compl. ¶¶ 60-61.

Finally, Episode Six occurred between January and May 2019, when Capt. Stephen and Capt. Borden investigated plaintiff's complaints against Officer Parnell and his claims of property loss. Plaintiff alleges that Capt. Stephen disavowed his previous assurance that Officer Parnell would be held accountable for his alleged actions and plaintiff would be compensated for

3   - ORDER

his losses and reinstated at his prison job, and that Capt. Borden denied him fair compensation for his losses when negotiating a settlement with plaintiff. Compl. ¶¶ 68-74, 86, 102. During that time, Supt. Kelly responded to several of plaintiff's grievance appeals about his missing property and implied that Officer Parnell did not follow ODOC procedures when searching plaintiff's cell and confiscating his property. *Id.* ¶¶ 27, 76.

Plaintiff further alleges that he sent "numerous letters" to Inspector General Craig Prins and S.I.U. Investigator Plante and requested that they initiate a criminal investigation into Officer Parnell's actions. *Id.* ¶¶ 83, 84. Plaintiff contends that they, along with Assistant Inspectors General McGlathery and Brown, refused to initiate an investigation or refer plaintiff's allegations to the Oregon State Police. *Id.* Plaintiff likewise alleges that he sought assistance from Supt. Kelly and Westside Institution Administrator Persson in an attempt to obtain adequate compensation for his property loss. *Id.* ¶¶ 93-94. Supt. Kelly did not respond to his request, and Persson forwarded plaintiff's request to Michael Gower, Assistant Director of Operations, who responded that the matter was "closed." Compl. ¶ 94. Plaintiff subsequently complained to Grievance Counselor Kidwell about delays in the grievance process. *Id.* ¶¶ 94-96.

Based on Episodes One through Five, plaintiff brings claims of First Amendment retaliation and unlawful seizure of property against Officer Parnell. Plaintiff brings claims against the remaining defendants on grounds that they failed to take appropriate action against Officer Parnell in response to plaintiff's grievances and did not fairly compensate plaintiff for his property loss.

## DISCUSSION

Defendants move for dismissal of all claims except for plaintiff's claims of retaliation against Officer Parnell arising from Episodes Two through Five. Defendants maintain that claims

4   - ORDER

against Officer Parnell arising from Episode One are untimely and that plaintiff's allegations against the remaining defendants fail to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).[2]

When challenged by a motion to dismiss, a complaint is construed in favor of the plaintiff and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not accept as true "conclusory" allegations, unwarranted deductions of fact, or unreasonable inferences. *Id.* Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Dismissal of a pro se complaint for failure to state a claim "is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

A. Statute of Limitations

In his First Cause of Action, plaintiff alleges claims against Officer Parnell arising from the conduct alleged in Episodes One through Five. Defendants move for dismissal of all claims

---

[2] In his Response to defendants' motion, plaintiff submitted numerous exhibits to support his claims. *See* Pl.'s Exs. (ECF Nos. 26-1, 27). Defendants request that their Motion to Dismiss be converted to a motion for summary judgment in light of plaintiff's reliance on documents outside of the pleadings. Defs.' Reply at 2 & n. 2 (ECF No. 31); *see also* Fed. R. Civ P. 12(d). I am not inclined to convert defendants' motion to one for summary judgement at this stage of the proceedings. Pro se plaintiffs must receive notice of summary judgment requirements before a federal court may grant summary judgment, and plaintiff has not been provided with such notice. *See Rand v. Rowland*, 154 F.3d 952, 953 (9th Cir. 1998) (affirming that a pro se prisoner is entitled to fair notice of Rule 56 requirements). With that said, plaintiff's Complaint references many of the documents he submitted as exhibits, and I may consider these documents when resolving defendants' Motion to Dismiss. *E.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).

5   - ORDER

arising from Episode One as untimely and barred by the relevant two-year statute of limitations.[3] *See Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). I agree that plaintiff's claims arising from Episode One are untimely.

As alleged in plaintiff's Complaint, Officer Parnell's conduct during Episode One occurred on June 4, 2017. Compl. ¶¶ 18-12. Plaintiff filed a grievance regarding this episode, Grievance No. OSP 2017-07-004, which tolled the statute of limitations during the grievance process. *Id.* ¶ 24; Pl.'s Exs. (ECF No. 26-1 at 52-54); *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) ("This circuit has, with other circuits, adopted a mandatory tolling provision for claims subject to the Prison Litigation Reform Act."); *see also Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005). On October 27, 2017, plaintiff received the response to his second grievance appeal, and the grievance process was complete. Compl. ¶ 27; Pl.'s Exs. (ECF No. 26-1 at 60). On March 5, 2020, plaintiff signed his Complaint, more than two years after the grievance process concluded.

In response to defendants' motion, plaintiff maintains that his grievance regarding the events of June 4, 2017 was "reopened" on March 7, 2019 when Supt. Kelly "promised to compensate Plaintiff for Defendant Parnell's theft of Plaintiff's Property." Pl.'s Resp. at 5; *see also* Compl. ¶ 27. However, Supt. Kelly's communication of March 7, 2019 did not reference or reopen Grievance No. OSP 2017-07-004, the grievance associated with the events of June 4, 2017. *See* Pl.'s Exs. (ECF No. 27 at 10, 52, 64, 74).

---

[3] Defendants initially moved to dismiss claims against Officer Parnell arising from Episode Two on untimeliness grounds. In their Reply, defendants concede that the grievance process for this episode tolled the statute of limitations until March 7, 2018, and they withdraw their motion as to Episode Two. *See* Defs.' Reply at 6, n.3.

6     - ORDER

Accordingly, plaintiff's claims arising from Episode One are time barred, and defendants' motion to dismiss is granted with respect to these claims.

B. <u>Failure to State a Claim Upon Which Relief May Be Granted</u>

Plaintiff's remaining causes of action bring claims against various prison officials based on their alleged failure to adequately investigate plaintiff's complaints and take appropriate disciplinary action against Officer Parnell, and their alleged failure to provide fair compensation for plaintiff's confiscated property.

1. <u>Claims Against Captain Cataldo</u>

In his Second Cause of Action, plaintiff alleges claims arising from Capt. Cataldo's involvement in Episode Four on December 4, 2018, when Officer Parnell allegedly conducted a "shake down" search of plaintiff's cell and falsely accused plaintiff of possessing "escape devices." Compl. ¶¶ 49-50, 55. Plaintiff alleges that he had informed Capt. Cataldo that Officer Parnell was targeting plaintiff and "was aware of Parnell's retaliatory animus toward" plaintiff based on his use of the grievance process. *Id.* ¶ 57. Plaintiff contends that, based on Officer Parnell's accusation that plaintiff possessed escape devices, Capt. Cataldo approved plaintiff's transfer to segregation "without investigating the matter further." *Id.* ¶ 55.

Notably, plaintiff does not allege that Capt. Cataldo personally retaliated against plaintiff because of his complaints against Officer Parnell or that Capt. Cataldo knew Officer's Parnell's allegations were false. Rather, plaintiff contends that Capt. Cataldo should have investigated Officer Parnell's allegations before transferring plaintiff to disciplinary segregation, based on plaintiff's history of conflict with Officer Parnell. Construing his allegations liberally, plaintiff arguably alleges that Capt. Cataldo violated his due process rights by transferring him to

disciplinary segregation without adequate evidence and that Capt. Cataldo was negligent in failing to ascertain the merits of Officer Parnell's accusations.

However, plaintiff does not allege a protected liberty interest necessary to sustain a procedural due process claim. A prisoner is entitled to procedural due-process protections only when a prison-disciplinary action "implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). It is well established that a twenty-five day stay in disciplinary segregation does not implicate a protected liberty interest. *See Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (finding that a prisoner's placement in segregated housing pending a disciplinary hearing did not implicate a protected liberty interest); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that placement in disciplinary segregation does not implicate a liberty interest because it "falls within the terms of confinement ordinarily contemplated by a sentence").

Further, to state a civil rights claim under § 1983, plaintiff must allege that 1) a person acting under color of law 2) deprived him of a federal constitutional right. 42 U.S.C. § 1983; *Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). A claim of negligence is a state law tort claim and not actionable under § 1983. Granted, under the Oregon Tort Claims Act (OTCA), plaintiff may file suit against ODOC for claims arising from the negligence of ODOC officers or employees acting within the scope of their employment or duties. *See* Or. Rev. Stat. § 30.265(1). However, as an instrumentality of the State of Oregon, ODOC is immune from suit for damages in federal court. *See Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) ("The

Oregon Tort Claims Act is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity.").

Accordingly, plaintiff fails to state viable claims against Capt. Cataldo, and the claims against him are dismissed.

2. Claims Against Captain Stephen

In his Third Cause of Action, plaintiff alleges claims against Capt. Stephen based on his investigation of plaintiff's complaints against Officer Parnell. Plaintiff alleges that Capt. Stephen failed to take appropriate action against Officer Parnell, failed to adequately supervise him, failed to investigate plaintiff's complaints with "due diligence," and failed to abide by his promise that plaintiff would be fairly compensated and obtain a replacement prison job. Compl. ¶¶ 209-217.

Plaintiff alleges no constitutional violation personally committed by Capt. Stephen and instead seeks to hold Capt. Stephen liable as Officer Parnell's supervisor. Liability under § 1983 arises upon a showing of personal participation by each defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, Capt. Stephen's allegedly negligent investigation into plaintiff's complaints and his alleged failure to fulfill alleged promises made to plaintiff actionable do not rise to the level of constitutional deprivations. Plaintiff's allegations fail to state a § 1983 claim against Capt. Stephen, and the claims against him are dismissed.

3. Claims Against Captain Borden

In his Fourth Cause of Action, plaintiff brings claims against Capt. Borden based on his involvement in obtaining compensation for plaintiff's confiscated property. Plaintiff alleges that

9   - ORDER

Capt. Borden failed to provide "complete compensation" for his property and engaged in deception when negotiating the settlement amount plaintiff accepted for his confiscated property. Compl. ¶¶ 226-237.

Construing his allegations liberally, plaintiff appears to allege that Capt. Borden deprived him of protected property interest. However, plaintiff cannot pursue a federal constitutional claim when the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). Oregon provides an adequate post-deprivation remedy for the loss of plaintiff's property through the Oregon Tort Claim Act (OTCA), and he cannot bring a federal claim seeking compensation for his lost property. *Gutierrez v. Williams*, 505 Fed. App'x 659, 660 (9th Cir. Jan. 17, 2013). To the extent plaintiff alleges fraud or deception on the part of Capt. Borden, such claims arise under state law and are not actionable under § 1983. Thus, plaintiff fails to state a viable claim against Capt. Borden.

    4. <u>Claims Against Superintendent Kelly</u>

In his Fifth Cause of Action, plaintiff brings claims against Supt. Kelly based on his response to plaintiff's grievance appeals and his failure to respond to plaintiff's subsequent communications about fair compensation for his lost property. Plaintiff alleges that Supt. Kelly was "deliberately indifferent" toward his constitutional rights by "failing to hold Parnell accountable" and failing to adequately address and resolve plaintiff's allegations of property theft. Compl. ¶¶ 245-255.

Plaintiff alleges no personal participation by Supt. Kelly in the alleged deprivation of his constitutional rights and instead brings claims against Supt. Kelly based solely on his supervisory authority. As explained above, § 1983 liability does not arise from supervisory status. At most,

plaintiff alleges that Supt. Kelly negligently fulfilled his duties, and, as explained above, negligence cannot sustain a claim under § 1983.

>    5. Claims Against Investigator Plante, Inspector General Prins, Assistant Inspectors General McGlathery and Brown, Administrator Persson, and Assistant Director Gower

In his Sixth and Seventh Causes of Action, plaintiff brings claims against Investigator Plante, Inspector General Prins, and Assistant Inspectors General McGlathery and Brown. Plaintiff alleges that these defendants failed to respond to plaintiff's complaints or refer them to the Oregon State Police and failed to conduct a "proper" investigation into plaintiff's complaints in accordance with ODOC procedures. Compl. ¶¶ 260-64, 268-72. In his Eighth Cause of Action, plaintiff brings claims against Administrator Persson and Assistant Director Gower based on their alleged refusal to ensure plaintiff received fair compensation. *Id.* ¶¶ 276-79.

Plaintiff alleges no personal participation by any of these defendants in the alleged deprivation of his constitutional rights, and his claims are based solely on their supervisory roles. Further, these defendants were not constitutionally required to respond to plaintiff's communications or refer his complaints for criminal investigation. Finally, non-compliance with state regulations does not constitute a violation of federal law. Accordingly, plaintiff fails to state § 1983 claims against Investigator Plante, Inspector General Prins, Assistant Inspectors General McGlathery and Brown, Administrator Persson, and Assistant Director Gower.

>    6. Claims Against Grievance Coordinator Kidwell

Finally, in his Ninth Cause of Action, plaintiff alleges claims against Grievance Coordinator Kidwell based on the alleged failure to follow ODOC procedures for handling grievances and the failure to review plaintiff's allegations against Officer Parnell during the grievance process. Compl. ¶¶ 284-89.

It is well established that prisoners have no "constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Thus, plaintiff's allegations fail to state a § 1983 claim against Kidwell.

## CONCLUSION

Defendants' Motion to Dismiss (ECF No. 18) is GRANTED. Plaintiff's claims against Officer Parnell arising from Episode One are DISMISSED as untimely. Plaintiff's claims against Kelly, Cataldo, Stephen, Plante, Prins, McGlathery, Brown, Borden, Kidwell, Persson, and Gower are DISMISSED for failure to state a claim, and these defendants are terminated from this action.

IT IS SO ORDERED.

DATED this 9th day of July, 2021.

                                                  s/ Michael J. McShane
                                                  MICHAEL J. MCSHANE
                                                  United States District Judge